**SUSMAN GODFREY L.L.P.**
A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

| Suite 5100<br>1000 Louisiana Street<br>Houston, Texas 77002-5096<br>(713) 651-9366 | Suite 1400<br>1900 Avenue of the Stars<br>Los Angeles, California 90067-6029<br>(310) 789-3100 | Suite 3800<br>1201 Third Avenue<br>Seattle, Washington 98101-3000<br>(206) 516-3880 |

Mark Hatch-Miller
Direct Dial (212) 336-8332

E-Mail mhatch-miller@susmangodfrey.com

April 26, 2022

Re:   EAM 40 Meadow Lane LLC, Case No. 22-10293 (BLS) ("EAM") and
      EZL 40 Meadow Lane LLC, Case No. 22-10294 (BLS) ("EZL" and
      together with EAM, the "Debtors")

Dear Judge Shannon:

We write as co-counsel for YH Lex Estates LLC ("YH") to oppose recently filed objections to the Trustee's request to consider his motion to approve the stipulation with YH on shortened notice. *See* ECF Nos. 23 & 24.

The Trustee's request for shortened notice is entirely appropriate under the circumstances and given the underlying facts that led to the current state of this case, detailed fully below and in the Trustee's motion. YH is likely on the very eve of obtaining a substantial judgment in New York state court against Ranee Bartolacci and her entity Ermitage One LLC ("Ermitage") for receiving approximately $12.6 million in voidable cash or property interest transfers at Nir Meir's direction. It is unsurprising that Meir, a deadbeat debtor who has been trying to avoid his nearly $20 million personal judgment obligation to YH for nearly a year, and his voidable transferee spouse Bartolacci, want to delay YH's pursuit of a judgment against Bartolacci and Ermitage. For the last year, Meir has gotten away with spending away millions of the dollars he caused to be transferred to Bartolacci and Ermitage for no apparent consideration.

Moreover, the Debtors filed bankruptcy proceedings under Chapter 7 of the Bankruptcy Code. Immediately upon doing so, the Trustee not only assumed full corporate authority for each of the Debtors, but also exclusive ability to exercise his business judgment over that of the Debtors' principals. The recently filed objections ask this Court to instate Meir's and Bartolacci's business judgment in place of the Trustee's objective business judgment, contrary to the most basic principles of bankruptcy law.

**I.    The Trustee, Not the Debtors (directed by Meir), Is Charged with Administration of the Estates.**

The Trustee is charged with administering the Debtors' estates to maximize the value to the Debtors' creditors, *not its alleged equity holders* (YH disputes that Bartolacci ever received a valid interest in either Debtor; instead, Meir created a sham, legally ineffective second operating agreement for Debtor EZL for the purpose of divesting himself of the memberships in that entity on the eve of YH's lawsuit). In fact, if we are to believe the representations made on the Schedules, prepared by and through Meir, that the claims listed therein are valid, then a distribution to equity is unlikely. Nevertheless, Meir now takes the position that he will be aggrieved if the Trustee seeks to pursue recovery of assets that Meir himself claimed to be estate property, not his own, in the quickest manner possible. The Trustee has little incentive to take any path other than the shortest one to recovery of assets for the benefit of the Debtors' creditors, if indeed any legitimate creditors of the entities exist (YH expects there will be no valid creditor claims, and that Meir is trying to recharacterize personal debts as entity obligations). This is the Trustee's mandate under the Bankruptcy Code, and it is *his* business judgment that should be exercised in the context of what is in the best interest of the Debtors' creditors.

The Trustee has concluded, in his business judgment, that the stipulation with YH is the best approach to recover assets for the possible benefit of any legitimate creditors as quickly as possible, and that it permits later inquiry about the validity of claims against the estate and if there will be any distributions to equity. The Trustee has already determined that remand of the pending litigation is in the best interests of the estate, and the Bankruptcy Court for the Southern District of New York has already ordered the remand to the Supreme Court of the State of New York, New York County. Indeed, Bankruptcy Judge Garrity remanded the case to the Supreme Court on Friday April 22, 2022 after reviewing the Stipulation presented to your Honor now.

The detour in the District Court and two Bankruptcy Courts was a design of Meir's own making. It was no coincidence that Meir caused the Debtors to file bankruptcy petitions, and then sought to remove the adversary proceeding from the New York State Court on the eve of Bartolacci's deposition (which she had avoided for months) and weeks before the trial of Bartolacci's role in the Meir-Bartolacci interspousal fraud scheme was scheduled to start before Justice Cohen, the presiding Justice of the Commercial Division of the New York State Court that has been overseeing the underlying Meir action and the fraudulent transferee proceedings against Meir and Bartolacci related thereto. There have been literally hundreds of filings on those dockets before Justice Cohen over the past year.

If Meir is unhappy with the outcome, then it is because his plan to avoid his personal creditors did not work. It is not because the Trustee is seeking the shortest path to recovery of assets for the Debtors' creditors in fulfillment of his mandate and in exercise of his business judgment. Once Meir directed these filings, he placed the Debtors, their assets, their liabilities, and the path towards liquidation squarely within the Trustee's control. Meir should not be permitted to derail the Trustee's extremely careful efforts in favor of attempting to protect himself and his wife (and her solely-owned entity) from his personal creditors. YH engaged in considerable discussion and information sharing with the

Trustee's extremely competent and experienced counsel, and still the Trustee entered into the stipulation and supported remand.

Additionally, counsel for the Debtors mischaracterizes some points of procedure. Debtors' counsel claims that "The Trustee signed the Stipulation on April 21, 2022, and then waited four days before filing the Motion to Approve with this Court, calling into question the need for expedited treatment." Not so. The Trustee moved as expeditiously as possible. The Bankruptcy Court ordered remand on Friday afternoon, April 22, 2022 near close of business. A copy of the remand order is attached hereto as Exhibit A. After the weekend, the Trustee sought approval to file the request for shortened notice with the Court and filed that Monday, April 25, 2022. Debtors' claim that the Trustee "waited four days" is an example of the types of misrepresentation used to create delays that YH has had to constantly challenge during the past two years of litigation.

Furthermore, the stipulation does not cause the Debtors harm. The stipulation does not resolve the case at all without inquiry. If the Debtors have legitimate creditors, then they will be addressed in the context of the Bankruptcy Cases. Giving the Trustee assets for the estates while the Trustee (and YH) consider the validity of those claims does not entirely resolve the case, but it certainly puts the Debtors' legitimate creditors, if there are any, in a better position – which is exactly the Trustee's mandate.

The Debtors' objection to a shorted notice period exposes their true intent, which is simply to delay the State Court proceedings as long as possible so that Meir and Bartolacci can have more time to spend proceeds that belong either to EAM/EZL creditors (if there are any) or to Meir's personal judgment creditor YH.

## II. The Debtor's Opposition Seeks to Derail, without Justification, the State Court Proceedings.

As detailed in the Trustee's motion, absent a finding that any facts preclude summary judgment, YH is seeking summary adjudication on all of its claims before the state court, but if summary adjudication is not granted in YH's favor, YH will commence trial against Meir, Bartolacci, and Ermitage One, LLC next Monday, May 2, 2022. This date has already been moved once before (trial was originally scheduled for April 19, 2022) due to delays orchestrated purposefully by the Respondents. This bankruptcy filing is just the latest attempt to fabricate confusion and delay judgment so that the Respondents can continue to flagrantly dissipate assets owned by them and/or the Debtors.

YH commenced the underlying action on November 3, 2020. In response to instruction by Justice Cohen of the Supreme Court of New York, YH filed a Petition commencing special proceedings against Nir Meir, Ranee Bartolacci, and Ermitage One LLC on February 10, 2022. That Petition seeks to avoid certain fraudulent transfers from Meir to Bartolacci and Ermitage. The facts in the underlying case lay bare the Debtor's true dilatory intentions.

Before October 2020, Meir was the 100% owner of EZL, which in turn was the 95% percent owner of EAM which held the 40 Meadow Lane Property in Southampton, NY (worth more than $40 million). Meir directly held the remaining 5% of EAM. In October

2020, on eve of YH's lawsuit against him, Meir attempted to transfer 95% ownership in EZL to his wife Bartolacci for no consideration. YH submits that, for various reasons, including a fraudulent and backdated operating agreement, the attempted transfer was a legal nullity.

As carefully documented in the remand application filed with Bankruptcy Judge Garrity of the Southern District of New York, in April 2021, in midst of YH lawsuit, Meir (aided and abetted by his counsel) directed the sale of the $43 million Property and directed that the net proceeds from the sale be transferred almost entirely to Bartolacci and her controlled entity Ermitage. As Justice Cohen, of the New York State Court noted on the record at a hearing held on January 31, 2022—at which time Justice Cohen ruled that Meir was judicially and equitably estopped from disclaiming 100% ownership of the entities that held title to the Property (EZL and EAM)--Meir's lawyers (who also represented Bartolacci and knew exactly how the proceeds were being distributed) misled the New York Court about the distribution, stating the proceeds belonged to Meir and would not be moved or dissipated and would be available to satisfy YH's then impending $20 million judgment, in order to avoid an attachment motion filed by YH. The absence of any restraint on the closing proceeds resulted in more than $18 million of the sale proceeds simply disappearing, including more than $12.5 million to Bartolacci.

The subsequent unraveling of Meir and Bartolacci's fraud scheme revealed that, at the very moment that counsel for Meir made their representations to Justice Cohen in March 2021 that *Meir's assets*, and particularly the net proceeds of the Property sale, would remain available to satisfy any judgment, they were actively assisting Meir in the concealment and transfer of those proceeds beyond YH's and the New York Supreme Court's reach through Bartolacci and Ermitage. As laid bare in the state court action, Meir engaged in a brazen fraud, which involved the transfer of more than $12.5 million of the net proceeds to his spouse, Bartolacci, and Ermitage, an entity formed by Meir and Bartolacci's joint counsel, the same attorneys currently representing Meir in this proceeding, to serve as a conduit for the receipt of Meir's fraudulent conveyances. Notably, Bartolacci, through Meir's current counsel (the attorneys she shared with Meir at the time), formed Ermitage on March 26, 2021, days before the Property closing, and days after Meir was placed on written notice not to dissipate his interest in the Property.

Post-Judgment everything changed. Meir and Bartolacci suddenly asserted the existence of a *second* operating agreement for an entity that owned a 95% interest in the Property and alleged that Bartolacci was the 95% beneficial owner of the Property. However, Meir's claim that Bartolacci owned 95% of EZL is based on a sham, backdated document that Meir created on the eve of YH's lawsuit to create a post-hoc justification for a fraudulent transfer. The end goal of Meir and Bartolacci's deceit was to create the false appearance that most of the proceeds from the sale of the Property belonged to Bartolacci all along, so that they could not be used to satisfy the Judgment, giving Meir and Bartolacci an opportunity to continue to dissipate the assets while YH was forced to initiate separate, costly, and time-consuming litigation against Bartolacci and Ermitage.

From that point on, Meir Bartolacci's multimillion dollar spending spree began. Upon Bartolacci's receipt of the proceeds, Bartolacci then transferred the bulk of the proceeds to

Ermitage's accounts. Although Ermitage's operating agreement required that all distributions be made to Ermitage's nominal member, Bartolacci, Meir caused Ermitage to dissipate the proceeds, including transferring millions of dollars back to himself. Apparently seeking to burn every dollar, rather than pay a penny of the Judgment, Meir and Bartolacci immediately prepaid one years' rent in the amount of approximately $1.6 million with respect to a luxury Miami Beach rental house (and made more than $600,000 of renovations to the rental property) and spent between $1-2 million on three high performance vehicles, a Porsche, Aston Martin, and rare Mercedes Benz. Meir also used the Ermitage accounts to launder the proceeds through the purchase of approximately $1.8 million in Swiss gold bars, which he purchased under the bogus name "Nir Bartolacci" invoiced to the offices of Meir's and Bartolacci's joint counsel at the time. Meir then wired hundreds of thousands of dollars to foreign nationals and spent another $1-2 million on private jet travel, fine wine, and strip clubs. Remarkably, counsel for Meir received an estimated $2 million of Meir's fraudulently conveyed assets in the process and are charging significant further sums to serve as Meir's counsel in the Bankruptcy Cases. Meir and Bartolacci did not dispute any of this wasteful spending in their filing with Bankruptcy Judge Garrity.

It is outrageous that Meir and Bartolacci are now trying to use the bankruptcy process for the nefarious purpose of trying unwind their own egregious fraudulent distribution scheme, after they already dissipated a large portion of the proceeds, and to delay entry to a voidable transfer judgment against Bartolacci, which is a necessary prerequisite for anyone other than Meir and Bartolacci (including legitimate creditors of EAM and EZL, if there actually are any) to begin efforts to claw back the moneys that Meir and Bartolacci took and spent wildly over the last year.

These facts show ample cause for the shortened notice period. Respectfully, YH urges the Court to approve the Stipulation, which is in the best interest of all parties legitimately seeking justice. Meir's and Bartolacci's objections should be given no weight at all.

Sincerely,

*/s/ Mark Hatch-Miller*

Mark Hatch-Miller

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
YH LEX ESTATES LLC, :
                                                                                       Plaintiff, :
 :
-against- :
 : Adv. Pro. No. 22-01077 (JLG)
NIR MEIR, RANEE A. BARTOLACCI, and :
ERMITAGE ONE, LLC, :
 :
                                                                   Defendants. :
------------------------------------------------------------x

## ORDER REMANDING PROCEEDING TO NEW YORK STATE SUPREME COURT

Upon the *Memorandum of Law in Support of YH Lex Estates LLC's Emergency Motion for an Order of Remand* (the "Remand Motion") and the supporting *Declaration of Mark Hatch-Miller* (the "Hatch-Miller Declaration") [See ECF Nos. 8 & 9], which were filed on April 8, 2022 by Plaintiff YH Lex Estates LLC ("YH") in the above-captioned adversary proceeding; and upon the *Order to Show Cause Why Proceeding Should Not be Remanded to New York State Supreme Court* (the "Order to Show Cause") [See ECF No. 10], dated April 11, 2022; and upon the *Declaration of Robert L. Rattet in Opposition to Plaintiff's Motion to Remand Removed Proceeding to Supreme Court, New York County* (the "Rattet Declaration") and the *Memorandum of Law in Opposition to Plaintiff's Motion to Remand Removed Proceeding to Supreme Court, New York County* (the "Meir Opposition") [See ECF Nos. 20 & 21]; and upon the *Declaration of Pankaj Malik in Opposition to Plaintiff's Motion to Remand Removed Proceeding to Supreme Court, New York County* (the "Malik Declaration") and the *Memorandum of Law in Opposition to Plaintiff's Motion* (the "Bartolacci/Ermitage Opposition") [See ECF Nos. 23 & 24], each filed on April 14, 2022; and upon *YH Lex Estates, LLC's Reply to Defendants' Oppositions to Plaintiff's Motion to Remand Removed Proceeding to Supreme Court, New York County* (the "Reply") [See. ECF No. 28], filed

1

on April 18, 2022; and upon the *Sur-Reply of Nir Meir in Further Opposition to Plaintiff's Motion to Remand Removed Proceeding to Supreme Court, New York County* (the "Sur-Reply") [See ECF No. 30], filed on April 19, 2022; and upon the consent of George L. Miller (the "Trustee"), the Chapter 7 Trustee of the bankruptcy estates of EAM 40 Meadow Lane LLC and EZL 40 Meadow Lane LLC, which cases are pending in the United States Bankruptcy Court for the District of Delaware, as Case Nos. 22-10293 and 22-10294, respectively, Judge Brendan L. Shannon, presiding (the "Bankruptcy Cases"), as set forth in the *Stipulation and Order Between and Among the Chapter 7 Trustee and YH Lex Estates LLC Resolving Procedural Posture and Clarifying Roles and Recovery with Respect to Certain Litigation Claims* (the "Stipulation"); and upon the hearing held before this Court on April 22, 2022 (the "Hearing"), the record of which is incorporated herein by reference; and the Court having jurisdiction to consider the Remand Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Remand Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);p and venue being properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Remand Motion and the Order to Show Cause having been provided; and the Court having found and determined that the relief sought in the Remand Motion is appropriate and in the best interests of the parties in interest; and that the legal and factual bases set forth in the Remand Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor **and for the reasons set forth on the record at the Hearing**, **[JLG]**

**IT IS HEREBY ORDERED THAT:**

1. The Remand Motion is granted.

2

2. The above-captioned proceeding shall be immediately remanded to the Supreme Court for the State of New York and shall continue as a special proceeding under the caption under which it was initially filed, *YH Lex Estates LLC v. Nir Meir, Ranee A. Bartolacci and Ermitage One, LLC*, Index No. 151267/2022 (Sup. Ct. N.Y. Cty.), Justice Joel M. Cohen presiding (the "Proceeding").

3. This Court does not ~~hereby~~ modify or extend, any scheduling or other orders entered by the Supreme Court prior to removal, other than those deadlines with respect to Defendants Bartolacci and Ermitage's deadline to oppose summary judgement and to commence Defendant Bartolacci's deposition, as set forth by the Court at the **telephonic** conference held on April 14, 2022. **[JLG]**

4. YH and the Trustee are authorized and empowered to take all steps and to take all such action necessary to implement the terms of this Order.

5. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; however, the adversary proceeding shall be closed by the clerk of the Court immediately upon remand of the proceeding to the Supreme Court.

Dated: New York, New York
April 22, 2022

/s/ *James L. Garrity, Jr.*
HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE

3