**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| EAM 40 MEADOW LANE LLC,[1] | ) Case No. 22-10293 (BLS) |
| | ) |
| Debtor. | ) |
| | ) |
| In re: | ) Chapter 7 |
| | ) |
| EZL 40 MEADOW LANE LLC,[2] | ) Case No. 22-10294 (BLS) |
| | ) |
| Debtor. | ) **Objection Due: May 2, 2022, 10:00 a.m. ET** |
| | ) **Hearing Date: May 2, 2022, 10:00 a.m. ET** |

**DEBTORS' OPPOSITION TO MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER
APPROVING STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND YH LEX
ESTATES LLC PURSUANT TO FED. R. BANKR. P. 9019**

EAM 40 Meadow Lane LLC ("EAM") and EZL 40 Meadow Lane LLC ("EZL", and

together with EAM, the "Debtors"), by their undersigned counsel, respectfully object to the

*Motion of Chapter 7 Trustee for an Order Approving Stipulation Between Chapter 7 Trustee and*

*YH Lex Estates LLC Pursuant to Fed. R. Bankr. P. 9019* [D.I. 21 in Case No. 22-10293, D.I. 15

in Case No. 22-10294] ("Motion") seeking approval of a stipulation between George L. Miller,

---

[1] The Debtor in this chapter 7 case, its jurisdiction of organization, and the last four digits of its U.S. taxpayer identification number is EAM 40 Meadow Lane LLC, a Delaware limited liability company (4553). The Debtor's principal place of business is located at 600 Madison Avenue, 15th Floor, New York, NY 10022.

[2] The Debtor in this chapter 7 case, its jurisdiction of organization, and the last four digits of its U.S. taxpayer identification number is EZL 40 Meadow Lane, LLC, a Delaware limited liability company (6074). The Debtor's principal place of business is located at 600 Madison Avenue, 15th Floor, New York, NY 10022.

1

the interim Chapter 7 Trustee of these estates (the "Trustee") and YH Lex Estates LLC ("YH"), as follows:

**PRELIMINARY STATEMENT**

YH is trying to collect on a judgment that it holds against a non-debtor party, Nir Meir. YH has no judgment against either of the Debtors. In particular, in February 2022 (prior to the petition date), YH filed suit in the New York Supreme Court to claw back under New York state law, as alleged fraudulent transfers, disbursements made at the closing of the sale of real property formerly owned by EAM. The determination of whether these transfers are potentially voidable as fraudulent conveyances is a "core proceeding" that should be heard by this Court, having exclusive jurisdiction over such proceedings. Furthermore, because the Bankruptcy Code provides statutory avoidance actions in addition to any state law causes of action that may exist, it is in the best interests of the estates that any avoidance actions be prosecuted here, in this Court, rather than in state court.

YH has now conceded that the alleged fraudulent conveyance causes of action belong to the bankruptcy estate of EAM. Indeed, the parties believe that after paying the holders of allowed claims against EAM in full from the proceeds of any successful avoidance action, there would be a surplus in the estate. The issue germane to the administration of these bankruptcy cases is entitlement to the surplus. YH contends that it is entitled to the surplus, as a judgment creditor of Mr. Meir. The Debtors, however, contend that the surplus belongs to the Debtors and, ultimately, to their rightful members. YH alleges that Mr. Meir is the 100% owner of the EZL (the holding company that owns 95% of EAM). The Debtors allege that EZL it is owned 95% by Renee Bartolacci, Mr. Meir's wife and 5% by Mr. Meir. This dispute is one of the primary causes of

2

action in the removed proceeding which YH wants remanded to state court, and its determination essential to the proper administration of these Chapter 7 cases.

YH, whispering in the Trustee's ear, persuaded the Trustee to enter into a Stipulation that would remand the fraudulent conveyance litigation to state court. In so doing, however, the estate would forfeit the benefit of the avoidance powers afforded under the Bankruptcy Code. Then, YH persuaded the Trustee to agree to turn over any surplus to YH, depriving and divesting the Debtors and their members of their property interests without any due process. This divestiture is a critical element of the stipulation the Trustee now wishes to cram down the throats of creditors and equity alike in violation of the parties' due process rights and under applicable Bankruptcy Rules, namely 7001. The Trustee rushed into the Stipulation before the Meeting of Creditors -- before even speaking with Mr. Meir.

In a surplus case, the chapter 7 trustee is mandated by the plain language of the Bankruptcy Code to return any surplus "to the debtor." *See* 11 U.S.C. § 726(a)(6). And, in a surplus case, the debtor and its shareholders are parties in interest to whom the chapter 7 trustee owes fiduciary duties. The proposed Stipulation flies in the face of the plain language of section 726(a)(6) and the Trustee's fiduciary duties and deprives the Debtors and their interest holders of constitutional due process and otherwise in violation of the Bankruptcy Rules.

The proposed Stipulation is inequitable, is not authorized under the Bankruptcy Code, and is in derogation of the Trustee's fiduciary duties to the Debtors and their members. It denies EZL and Ms. Bartolacci of their constitutional property rights without due process of law. Respectfully, the Court should not approve the Stipulation.

3

## I.
## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 544, 548, 550 and 726(a) of the Bankruptcy Code, and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II.
## BACKGROUND

**A.      Ownership Structure of the Debtors**

3.      Debtor EAM is owned 95% by Debtor EZL, with the remaining 5% being held by Nir Meir.  EZL is owned 95% by Ranee A. Bartolacci, Mr. Meir's wife; Mr. Meir holds the remaining 5% interest in EZL.  The structure of the Debtors is illustrated as follows:



4

4.      Mr. Meir is the Manager of EZL.

5.      EZL is the Managing Member of EAM.

**B.      The April 5, 2021 Sale of the Property**

6.      Debtor EAM is the former owner of improved real property known as 40 Meadow Lane, Southampton, New York (the "Property").

7.      On April 5, 2021, the Property was sold to an unrelated third party for approximately $43 million.

8.      At the time of the April 5, 2021 sale, YH was engaged in litigation against Mr. Meir and others.  YH's claim against Mr. Meir was on account of a personal guaranty of one or more loans made by YH to HFZ Capital Group LLC.

9.      At the time of the sale, YH had not yet obtained a judgment against Mr. Meir.

10.      At the time of the sale, YH also did not hold a judgment or any claim against Ms. Bartolacci or Ermitage One, LLC, a limited liability company owned by Ms. Bartolacci ("Ermitage").

11.      In accordance with a Memorandum of Sale, the title company handling the sale retained approximately $1.4 million for various escrows, closing costs and expenses.  The title company then disbursed approximately $28.8 million to the first and second lienholders, approximately $0.5 million to pay legal fees, approximately $1.6 million to Mr. Meir, approximately $10.6 million to Ms. Bartolacci, and $2 million to Ermitage.

**C.      Litigation Following the Sale of the Property**

12.      On June 15, 2021, approximately two months after closing of the sale of the Property, YH obtained judgment against Mr. Meir in the approximate amount of $20 million on account of Mr. Meir's personal guaranty.

5

13.     YH commenced attempts to collect its judgment against Mr. Meir.  Focusing on the sale of the Property, YH alleged that Ms. Bartolacci and Ermitage improperly received proceeds from the sale of the Property as fraudulent conveyances from *Mr. Meir*. YH notably failed to name EAM, the Property owner, as a named party or as the party from whom the sale proceeds were disbursed on account of, apparently in order to incorrectly allege that Nir Meir was the Property owner, so that YH could even have any basis to sue Ms. Bartolacci or Ermitage in the first place.

14.     On November 24, 2021, to establish her entitlement to the sale proceeds, Ms. Bartolacci filed a complaint against YH and EZL, seeking declaratory relief as to her ownership interest in EZL, commencing *Bartolacci v. YH Lex Estates LLC, et al*., Case No. 21-025805-CA-01(08), in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "Action for Declaratory Relief").  On December 22, 2021, YH removed the Action for Declaratory Relief to the United States District Court for the Southern District of Florida, commencing Civil No. 1:21-cv-24423-MGC.[3]

15.     On February 10, 2022, YH commenced litigation in New York against Mr. Meir, Ms. Bartolacci and Ermitage, seeking turnover of the sale proceeds, styled as *YH Lex Estates LLC v. Nir Meir, Ranee A. Bartolacci and Ermitage One, LLC*, Index No. 151267/2022, in the Supreme Court of the State of New York, County of New York (the "New York Turnover Action").

16.     In the New York Turnover Action, YH contended that Mr. Meir, not EAM, transferred the sale proceeds of the Property to Ms. Bartolacci and Ermitage as an interspousal

---

[3] On April 13, 2022, the District Court entered its Order Staying Upon Suggestion of Bankruptcy, to stay the Action for Declaratory Relief until the conclusion of EZL's bankruptcy case; in the interim, the case has been administratively closed.

fraudulent conveyance.  YH's argument blatantly disregards EAM's ownership of the Property, and further disregards Ms. Bartolacci's ownership interest in EZL.[4]

17.     Notwithstanding these blatant deficiencies, any fraudulent conveyance claim arising from the disbursement of the sales proceeds of the Property is an asset of EAM, not Nir Meir.   To the extent that distribution of sale proceeds may be clawed back as fraudulent conveyances, the Bankruptcy Code requires that the proceeds of such litigation be used to pay holders of allowed claims against EAM, with any surplus returned to EAM.

**D.     The Debtors Commence These Bankruptcy Cases And Cooperate With the Trustee**

18.     The Debtors filed voluntary petitions for relief under chapter 7 of the United States Code (the "Bankruptcy Code") on April 6, 2022 (the "Petition Date").

19.     The Trustee was appointed chapter 7 trustee on an interim basis by the Office of the United States Trustee.

20.     Within 24 hours of the Trustee's appointment, the undersigned counsel for the Debtors reached out to the Trustee to alert him of the pending New York Turnover Action and its subsequent removal to Federal Court (see below), and to advise him that YH was asserting a cause of action that belonged to EAM's Chapter 7 estate and therefore constitutes property of EAM's estate under section 541 of the Bankruptcy Code.

21.     The undersigned counsel asked the Trustee to weigh in on the requested transfer of venue of the New York Turnover Action to this Court.

22.     In the days following the Petition Date, counsel for the Debtors provided the Trustee with copies of the Debtors' operating agreements, pleadings from the New York Turnover Action and Action for Declaratory Relief, its subsequent removal and following transfer to the

---

[4] YH disputes that Ms. Bartolacci holds a 95% interest in EZL.

United States Bankruptcy Court of the Southern District of New York, as well as numerous documents from the closing of the sale of the Property evidencing the aforementioned transfers and bank statements.

23.    On April 7, 2022, Mr. Meir removed the New York Turnover Action to the United States District Court for the Southern District of New York, which then referred the matter to the United States Bankruptcy Court for the Southern District of New York.  YH moved to remand. Mr. Meir moved to transfer venue of the New York Turnover Action to this Court.

24.    The Debtors timely filed their bankruptcy schedules and statements of financial affairs on April 18, 2022.

**E.    The Trustee Enters Into The Stipulation**

25.    The New York Bankruptcy Court conducted a hearing on YH's motion to remand on April 22, 2022. The night before the scheduled hearing on YH's motion to remand, YH presented the Stipulation to the New York Bankruptcy Court.

26.    The Trustee entered into the Stipulation prior to conducting the Meeting of Creditors (scheduled for April 28, 2022), prior to questioning Mr. Meir under oath, and without first discussing or disclosing its terms to the Debtors or to undersigned counsel.[5]

27.    The Stipulation provides, among other things, that

a.    The Trustee would agree to remand of the New York Turnover Action, provided that any proceeds or recovery would be paid over to the bankruptcy estate of EAM for distribution in accordance with section 726 of the Bankruptcy Code.  Stipulation, ¶ 5.

---

[5] Mr. Meir was ill and unable to attend the Meeting of Creditors scheduled on April 28, 2022.  The Trustee was provided with his physician's note.

b.      The Trustee would consent to YH being granted a claim pursuant to 11 U.S.C. § 503(b), for substantial contribution, to the extent that YH recovers monies, with priority ahead of allowed claims of general unsecured creditors.  Stipulation, ¶ 6.

c.      The Trustee would consent to YH's standing as a creditor to prosecute claim objections to the extent that the Trustee declines to prosecute any claim objection directly. Stipulation, ¶ 7.

d.      Following distributions to EAM's creditors, the Trustee would distribute the balance "directly to YH as a party in interest, recognizing YH as the sole economic interest holder of EZL's interest in EAM pursuant to and to the extent of the Meir Judgment and a Charging Order to which the Trustee consents herein."  Stipulation, ¶ 8.

28.     The Stipulation highlights two critical points:

- First, any fraudulent conveyance causes of action, including the claims asserted in the New York Turnover Action, belong to EAM's Chapter 7 estate.

- Second, YH expects there to be a surplus, after EAM's creditors are paid in full.  Otherwise, YH would have never agreed to the Stipulation.

- Third, the Stipulation is conditioned upon and subject to Bankruptcy Court approval.

29.     At a hearing held on April 22, 2022, the New York Bankruptcy Court granted the motion to remand.  However, the Stipulation provides and acknowledges that in the event that this Court does not approve the Stipulation, the New York Turnover Action will be stayed.

9

### III.
### GROUNDS FOR RELIEF

29.     The Stipulation should not be approved.    The Stipulation is not equitable to the

Debtors' creditors and members, it exceeds the Trustee's powers under the Bankruptcy Code, it is

in breach of the Trustee's fiduciary duties, and it denies EZL and EZL's constituencies

constitutional due process.

A.      **The Stipulation Is Inequitable And Should Not Be Approved**

30.     First, when a bankruptcy court evaluates a proposed settlement, "each part of the

settlement must be evaluated to determine whether the settlement as a whole is reasonable," and

the "Court must consider the reasonableness of the resolution in light of each of the separate claims

being resolved or released in the [settlement]." *In re Wash. Mut., Inc.*, 442 B.R. 314, 329 (Bankr.

D. Del. 2011).

31.     Second, a bankruptcy court's consideration of a settlement should not end with the

following four factors:   (a) probability of success in litigation; (b) the likely difficulties in

collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay;

and (d) the paramount interests of creditors – a bankruptcy court "may approve a settlement only

if we conclude that it is 'fair and equitable;" *Eddy v. Nat'l Union Fire Ins. Co. of Pittsburgh (In

re Med. Asset Mgmt, Inc.)*, 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000), *citing U.S. v. AWECO, Inc.

(In re AWECO, Inc), 725* F.2d 293, 297 (5th Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83

L.Ed.2d 182 (1984).

32.     Specifically,

> The fairness to the settling parties of a proposed settlement
> agreement may not warrant its approval if the rights of others who
> are not parties to the settlement agreement are unduly prejudiced.
> We must determine that "no one has been set apart for unfair
> treatment."

WBD (US) 56285116v5

*In re Med. Asset Mgmt, Inc.*, 249 B.R. at 663, *citing Cullen v. Riley (In re Masters Mates & Pilots Pension Plan),* 957 F.2d 1020, 1026, 1031 (2d Cir. 1992).

33.     The Debtors and their members are not parties to the proposed Stipulation; nor were they consulted prior to its execution.  Yet, the Stipulation would forfeit the Debtors' right to any surplus by summarily and without due process disposing and divesting them of their lawful interests.  By forfeiting the Debtors' right to any surplus, the Trustee would unconstitutionally forever deprive the Debtors of their property and the Debtors' members of their right to distribution.

34.     Moreover, the Stipulation does not satisfy the paramount interest of creditors.  YH (who holds a judgment against Mr. Meir and not against either of the Debtors) is not armed with the full arsenal of avoidance powers that a trustee enjoys on behalf of the Debtors' estates under the Bankruptcy Code.  Prosecution of the Turnover Action to the New York Supreme Court will deprive the estates of any statutory advantage that the Bankruptcy Code confers.

B.     __The Stipulation Exceeds the Powers of the Trustee and Should Not Be Approved__

35.     Section 726(a) of the Bankruptcy Code mandates how property of a bankruptcy estate shall be distributed.   Once creditors are paid in full, including allowed interest on their claims, any surplus is to be distributed "to the debtor."  11 U.S.C. § 726(a)(6) (emphasis added).

36.     The distribution scheme of section 726 is unequivocal; it may not be modified by the Trustee, or by the Court.  *Czyzewki v. Jevic Holding Corp*., ___ U.S. ___, 137 S.Ct. 973, 979 197 L.Ed.2d 398 (2017) (referring to section 726 and stating "[t]he Code makes clear that distributions of assets in a Chapter 7 liquidation must follow this prescribed order").

37.     YH and the Trustee contemplate that there will be a surplus in these cases.  That surplus must be distributed to the Debtors. *In re Georgian Villa, Inc*., 55 F.3d 1561, 1563-64 (11th

Cir. 1995) ("the plain language of Bankruptcy Code compels distribution of the surplus to the debtor" rather than its shareholders); *In re Atkins*, 343 B.R. 283, 284 (Bankr. M.D. Fla. 2005) (ordering surplus released to the debtor); *In re Rimsat, Ltd*., 229 B.R. 910 (Bankr. N.D. Ind. 1998) (applying statutory directive of section 726(a)(6) and ordering that surplus be distributed to the debtor, and not to its shareholders).

38.    A settlement that purports to pay an estate surplus to a party other than a debtor (absent the consent of all constituencies) is in contravention of the Bankruptcy Code's distribution scheme and may not be approved.  *See In re Donovan*, Case No. 00-10486 (JMD), 2002 WL 1011298 * 5 (Bankr. D. N.H. May 15, 2002) (refusing to approve a chapter 7 trustee's settlement which provided that any amount remaining after payment to creditors would be returned to the settling party).  The "Court has no power to alter the distribution scheme set forth in section 726." *Id.*  Nor do the Debtors consent to such a distribution.

C.    **The Stipulation Is In Breach of the Trustee's Fiduciary Duties to the Debtors and Should Not Be Approved**

39.    A chapter 7 trustee is a fiduciary.  *See In re Vebeluinas*, 231 B.R. 181, 192 (Bankr. S.D.N.Y. 1999) ("fiduciary duties are owed not only to the entire creditor body but to the debtor as well"). "The trustee is a fiduciary charged with protecting the interests of *all estate beneficiaries* – namely, all classes of creditors, including those holding secured, administrative, priority, and non-priority unsecured claims, *as well as the debtor's interest in exemptions and in any possible surplus property*."   United States Department of Justice, Executive Office for United States Trustees, "Handbook for Chapter 7 Trustees," at p. 4-2 (2012) (emphasis added).

WBD (US) 56285116v5

40.    A chapter 7 trustee's failure to tender a surplus to a debtor is a breach of the trustee's fiduciary duty. *In re George Schumann Tire & Battery Co., Inc*., 145 B.R. 104, 108 (Bankr. M.D. Fla. 1992) (failure to timely turn over surplus was a breach of chapter 7 trustee's fiduciary duty).

41.    The integrity of the bankruptcy system also requires a trustee to be impartial – to all creditors *and* to the debtor. *Vebeliunas*,  231 B.R. at 191-92 (noting requirement of impartial attitude).    The Trustee hurriedly drew conclusions about the Debtors prior to the Meeting of Creditors, raising serious concerns about the degree to which this Trustee will be impartial and fair to the Debtors going forward.

D.    **The Stipulation Violates the Due Process Rights of the Debtors and Their Interest Holders**

42.    By divesting EZL of its interests in EAM and haphazardly assigning them away to YH for no consideration, the Stipulation constitutes, inter alia, an unlawful taking in violation of due process requirements under both the U.S. Constitution and Bankruptcy Rule 7001.

43.    In bankruptcy, "'property interests are created and defined by state law' and 'unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 451 (2007).

44.    The Fifth Amendment, U.S. Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, **nor be deprived of life, liberty, or property, without due process of law**; nor shall private property be taken for public use, without just compensation. (emphasis supplied).

13

45.     Thus, the Constitution mandates that no person shall be deprived of property "without due process of law." U.S. Const. Amend. V. Whereas "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause," the Supreme Court observes that "there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *See Phillips v. Washington Legal Found.*, 524 U.S. 156, 163–64, 118 S. Ct. 1925, 1930, 141 L. Ed. 2d 174 (1998) ("The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. *164 v. Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 585–586, 41 L.Ed. 979 (1897), provides that "private property" shall not "be taken for public use, without just compensation."").

46.     Fundamentally, due process mandates that all property claimants receive appropriate notice and opportunity to object to any decision affecting their property interests. *In re Morabito Bros., Inc.*, 188 B.R. 114 (Bankr. W.D.N.Y. 1995). On the issue of deprivation of property, the Seventh Circuit has stated that "To take away a person's property—and a lien is property—without compensation or even notice is pretty shocking…". *In re Agriprocessors, Inc.*, 465 B.R. 822 (Bankr. N.D. Iowa 2012) (*quoting Matter of Edwards*, 962 F.2d 641, 644 (7th Cir.1992)).

47.     The Federal Rules of Bankruptcy Procedure require the filing of an adversary proceeding to determine the issues decided by the Stipulation.  An adversary proceeding is required to determine the "validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2).  An adversary proceeding is required to obtain "an injunction or other equitable relief," such as a charging order.  Fed. R. Bankr. P. 7002(7).  An adversary proceeding is also required to

14

obtain a declaratory judgment about a matter otherwise requiring an adversary proceeding, and to determine a claim or cause of action removed under 28 U.S.C. §1452. Fed. R. Bankr. P. 7002(9) and (10). "[W]here the Rules require an adversary proceeding – which entails a fundamentally different, and heightened, level of procedural protections – to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one." *In re Mansaray-Ruffin*, 530 F.3d 230, 242 (3d Cir. 2008).

48.    Put simply, the Trustee cannot summarily dispose or take the Debtors or their interest holders' property interests through a Bankruptcy Rule 9019 motion, which failed to provide such parties in interest with due process.

E.    **The Trustee May Not Anoint YH With Standing**

49.    As a matter of law, the Trustee may not unilaterally confer standing on YH to object to creditors' claims.

50.    Only "parties in interest" have standing to object to claims. 11 U.S.C. § 502(a). In a chapter 7 case, the term "parties in interest" is undefined, with the exception of the sole example provided in the statute. *Id.* (a "creditor of a general partner in a partnership that is a debtor in a case under chapter 7" is a party in interest).[6]

51.    YH's status as a creditor of Mr. Meir -not the Debtors- is too attenuated to confer "party in interest" standing for purposes of section 502(a). YH is a judgment creditor of a non-Debtor. YH is not a creditor of the Debtors.[7] YH is not a member of the Debtors. YH has no pecuniary interest in these estates.

---

[6] "Party in interest" standing conferred under 11 U.S.C. § 1109 does not apply in chapter 7. Unlike a general partner of a partnership (which is generally liable for the obligations of the partnership), a manager or member of a limited liability company is not liable for the obligations of the limited liability company.

[7] YH was included in the Debtors' bankruptcy schedules on account of the pending litigation, purely for notice purposes.

WBD (US) 56285116v5

52.    As a judgment creditor of Mr. Meir, YH's relationship to the Debtors is that of a creditor of a non-Debtor with a charging order against one of the Debtors' minority members. YH's relationship is analogous to the "creditor of a creditor" relationship that courts have found does not suffice to confer "party in interest" standing.  *See In re Comcoach Corp.,* 698 F.2d 571, 575 (2d Cir. 1983) (creditor of a creditor of a debtor was not a party in interest); *In re Huggins*, 460 B.R. 714, 716 (Bankr. E.D. Tenn. 2011) (creditor of a creditor of a debtor was not a party in interest).  *See also In re Refco*, 505 F.3d 109, 117 (2d Cir. 2007) (investors in adversary proceeding defendant were not parties in interest); *In re Vantage Drilling Intern*., 603 B.R. 538, 545, 547 (D. Del. 2019) (shareholder of a shareholder of a debtor was not a party in interest, nor was a creditor of a shareholder of a debtor).  And, importantly, the right of a party in interest must be asserted by that party in interest, not in someone else.  *Id.*

53.    Nor can YH be granted derivative standing to object to claims.  The Debtors are Delaware limited liability companies.  Under Delaware law, the right to bring a derivative action on behalf of a limited liability company is reserved to members or assignees of an interest in the limited liability company.  *CML V, LLC v. Bax, et al*., 6 A.3d 238, 241 (Del. Ch. 2010); 6 Del. C. §§ 18-1001, 18-1002.  YH is neither.

54.    Moreover, the Trustee should not be permitted to delegate standing to a third party that does not have fiduciary duties to creditors, the estate and the Debtors.

E.    **YH Is Not Entitled to Section 503(b)(3) Relief**

55.    In the Stipulation, the Trustee would consent to YH being granted a "substantial contribution" claim under section 503(b) of the Bankruptcy Code, to recover its litigation expenses from EAM's bankruptcy estate.

16

56.     Section 503(b) does not apply to YH.  Presumably the Trustee is attempting to shoehorn YH into the provisions of section 503(b)(3)(D) or 503(b)(4).  However, a substantial contribution claim may only be allowed to a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders.  11 U.S.C. § 503(b)(3). YH is not a creditor, nor is it any of the other enumerated parties.   Its counsel is not counsel to a creditor, or to one of the other enumerated parties.

57.     The Stipulation entitling YH to section 503(b) relief should not be approved.

17

## <u>CONCLUSION</u>

The Court should deny the Motion and decline to approve the Stipulation. The Stipulation is highly inequitable and prejudicial to the Debtors and their members, contrary to the plain meaning of section 746(a)(6) of the Bankruptcy Code and in breach of the Trustee's fiduciary duties to the Debtors and their members. The Stipulation violates constitutional due process as well as the requirements under the Bankruptcy Rules in improperly divesting the Debtors and their interest holders in a hasty, summary proceeding brought on by drastically shortened notice. YH is not a "party in interest" who may be accorded standing to object to claims, nor would it ever be entitled to a substantial contribution claim under section 503(b) of the Bankruptcy Code. For any or all of these reasons, the Stipulation should be rejected by the Court.

WHEREFORE, the Debtors respectfully request that this Court enter an Order (i) denying the Motion, and (ii) granting such further relief as may be just and proper.

Dated:  April 29, 2022.
Wilmington, Delaware

*/s/ Matthew P. Ward*
Matthew P. Ward (DE Bar No. 4471)
Lisa Bittle Tancredi (DE Bar No. 4657)
1313 North Market Street, Suite 1200
**WOMBLE BOND DICKINSON (US) LLP**
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: lisa.tancredi@wbd-us.com

*Counsel to the Debtors*

WBD (US) 56285116v5