IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EAM 40 MEADOW LANE LLC,<br><br>　　　　Debtor. | Case No. 22-10293 (BLS)<br><br>Chapter 7 |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the bankruptcy estate of EAM 40 Meadow Lane LLC,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>HARSH PADIA,<br><br>　　　　Defendant. | Adv. Pro. No. _____ |

## COMPLAINT

George L. Miller, the Chapter 7 Trustee (the "Trustee") for the Chapter 7 bankruptcy estate of EAM 40 Meadow Lane LLC (the "Debtor"), by and through his undersigned counsel, respectfully states as follows for his Complaint against Harsh Padia ("Harsh Padia" or the "Defendant") to avoid and recover fraudulent transfers, and for other relief as requested herein:

### INTRODUCTION[1]

1.　This adversary proceeding is brought in connection with the Trustee's efforts to recover proceeds from the sale of 40 Meadow Lane, which were siphoned off from the Debtor's estate at the direction of Nir Meir, the manager of the Debtor's managing member. The Trustee seeks to avoid and recover certain obligations incurred for, and transfers made to or for, the benefit of the Defendant by the Debtor with the actual intent to hinder, delay, or defraud its creditors, and

---

[1] Any capitalized terms not defined in this section shall have the meanings ascribed to them below.

LEGAL\69741940\3

for less than reasonably equivalent value.  The Trustee also seeks to recover the equivalent of $52,010.00 in subsequent transfers of Sale Proceeds made to the Defendant.

2. In addition, the Trustee seeks to disallow, pursuant to 11 U.S.C. §§ 502(d) and/or (j), any and all claims that the Defendant has filed or asserted against the Debtor's estate.  The Trustee hereby reserves all of his rights to object to any such claim for any reason.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334(b) because this adversary proceeding arises under and in, and is related to, the above-captioned case under title 11 of the United States Code (the "Bankruptcy Code").

4. This matter is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is appropriate in this District pursuant to 28 U.S.C. § 1409(a).

## PARTIES

6. Plaintiff George L. Miller is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate").  The Trustee maintains an office at 8 Penn Center, Suite 950, 1628 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

7. On April 6, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Also on April 6, 2022, the Trustee was appointed to serve as the Chapter 7 Trustee of the Debtor's Estate.

8. Defendant Harsh Padia is an individual residing in the State of New York.

## FACTUAL BACKGROUND

**A.     The Formation and Ownership of the Debtor**

9.     The Debtor was organized in June 2013 as a limited liability company in the state of Delaware. Initially, 100% of the ownership interests in the Debtor were held by HFZ Capital Group LLC ("HFZ Capital"). Nir Meir was employed as the managing director of HFZ Capital and managed the firm's day-to-day operations.

10.     The Debtor's Corporate Ownership Statement, however, reflects that as of the Petition Date, 95% of the ownership interests of the Debtor were held by EZL 40 Meadow Lane LLC ("EZL").[2] Upon information and belief, the remaining 5% of the ownership interests of the Debtor were held by HFZ Capital. The managing member of the Debtor is EZL, and the manager of EZL is Nir Meir.

11.     Upon information and belief, the Debtor was organized for the sole purpose of purchasing the real property located at 40 Meadow Lane, Southampton, New York ("40 Meadow Lane").

**B.     The Acquisition and Construction of 40 Meadow Lane**

12.     In or around December 2013, the Debtor acquired 40 Meadow Lane for a purchase price of $10.5 million.

13.     The Debtor acquired the property with the purpose of tearing down the existing home and building a new luxury home. Construction took approximately four years to be completed. Redevelopment of the property was initially delayed due to litigation over the proposed modern design of the new home, which would sit within the Village of Southampton's historical district.

---

[2] EZL is also a debtor in a chapter 7 bankruptcy case pending before this Court, styled *In re EZL 40 Meadow Lane LLC*, Case No. 22-10294 (BLS).

LEGAL\69741940\3

14. In connection with the construction of the new luxury home, Nir Meir caused the Debtor to incur significant debts. Between 2015 and 2019, the Debtor borrowed more than $18.35 million from MCAM 40ML Lender LLC, as successor-by-assignment to ConnectOne Bank ("MCAM"), for construction costs.

15. Upon completion of the construction, Nir Meir and his family moved into the luxury home and resided there until approximately April 2021. Neither Nir Meir nor his family paid any consideration to the Debtor for use of 40 Meadow Lane.

C. **Nir Meir's Fraudulent Schemes with Respect to HFZ Capital**

16. On February 7, 2024, Manhattan District Attorney Alvin L. Bragg, Jr. announced the indictment of HFZ Capital, Nir Meir and others, for allegedly stealing more than $86 million from investors, subcontractors, and New York City through a series of frauds and schemes that began in 2015. The indictments contain allegations of widespread fraud primarily spearheaded by Nir Meir, as well as allegations that Nir Meir misappropriated investor and lender proceeds to fund his lavish lifestyle.

17. Upon information and belief, Nir Meir's fraudulent schemes started to unravel in or around 2020 when HFZ Capital defaulted on certain loan obligations in connection with various construction projects. Certain lenders and investors of HFZ Capital commenced actions to collect on the debts. Because Nir Meir had personally guaranteed some of HFZ Capital's debt obligations, he was named as a defendant in certain actions.

18. By way of example, on November 3, 2020, creditor YH Lex Estates LLC commenced an action, styled *YH Lex Estates LLC v. HFZ Capital Group LLC, Ziel Feldman and Nir Meir*, Index No. 655980/2020, to compel payment of a debt owed to YH Lex Estates LLC.

19.     Also around the same time, HFZ Capital's founding principal, Ziel Feldman, purportedly discovered that Nir Meir had been misappropriating HFZ Capital's funds for his own benefit and forging certain business records. Ziel Feldman then fired Nir Meir from HFZ Capital.

20.     Nir Meir's removal from HFZ Capital triggered a dispute over ownership of the Debtor and 40 Meadow Lane, with HFZ Capital asserting that it possessed an indirect ownership interest in the property by virtue of its minority ownership interest in the Debtor. Upon information and belief, on December 29, 2020, HFZ Capital caused the Debtor to commence an action, styled *EAM 40 Meadow Lane, LLC v. Nir Meir*, Index No. 620169/2020, in the Supreme Court of the State of New York, County of Suffolk, to evict Nir Meir and his family from 40 Meadow Lane.

**D.     Nir Meir's Use of the Debtor to Secure His Personal Obligations to Harsh Padia**

21.     No longer having access to HFZ Capital's funds, Nir Meir began using the Debtor's assets as collateral for personal loans.

22.     By way of example, on October 7, 2019, HFZ Capital executed three promissory notes in favor of Harsh Padia, pursuant to which Harsh Padia advanced $9,937,040 to HFZ Capital. Nir Meir personally guaranteed HFZ Capital's payment obligations under the promissory notes (the "Meir Guaranties").

23.     On June 8, 2020, Harsh Padia loaned $2,000,000 to HFZ Member RB Acquisitions LLC (the "HFZ Member Loan"). Upon information and belief, as security for the HFZ Member Loan, Nir Meir caused the Debtor to grant Harsh Padia a security interest on, among other things, all buildings, structures, improvements and fixtures situated on 40 Meadow Lane.

24.     On December 15 and 16, 2020, Harsh Padia recorded two UCC-1 financing statements against 40 Meadow Lane with the Suffolk County Clerk Records Office (the "UCC Liens"). True and correct copies of the UCC Liens are attached hereto as **Exhibit A**.

25. The Debtor did not receive any consideration in exchange for the UCC Liens.

26. On January 19, 2021, Nir Meir caused the Debtor to execute a promissory note in favor of Harsh Padia, pursuant to which the Debtor promised to pay Harsh Padia $8 million in conditional satisfaction of the Meir Guaranties (the "Mortgage Note"). A true and correct copy of the Mortgage Note is attached hereto as **Exhibit B**.

27. The Mortgage Note provides that the Debtor's obligations thereunder were to be secured by a mortgage on 40 Meadow Lane in favor of Harsh Padia. On or around February 5, 2021, Nir Meir caused the Debtor to grant Harsh Padia a mortgage on 40 Meadow Lane to secure the Mortgage Note debt of approximately $8,000,000 (the "Mortgage" and together with the UCC Liens, the "Liens").

28. Harsh Padia recorded the Mortgage against 40 Meadow Lane on or around February 5, 2021. The Debtor did not receive any consideration in exchange for the Mortgage.

29. Nir Meir caused the Debtor to make the Mortgage Note in favor of Harsh Padia after Nir Meir had already been fired from his position as managing director of HFZ Capital. Upon information and belief, Nir Meir granted Harsh Padia the Mortgage on 40 Meadow Lane to prevent Harsh Padia from collecting on the Meir Guaranties.

**E.   The Sale of 40 Meadow Lane and Initial Fraudulent Transfers of the Sale Proceeds**

30. By early 2021, creditors were closing in on Nir Meir. In order to evade his creditors, Nir Meir, with the help of others, concocted a scheme to sell 40 Meadow Lane, thereby stripping the Debtor of its principal asset, and hide the sale proceeds from creditors.

31. On April 5, 2021, Nir Meir caused the Debtor to sell 40 Meadow Lane together with certain furnishings to a third-party for a total of $44,908,656 (the "Sale Proceeds"). Despite

the Debtor holding title in fee simple to 40 Meadow Lane, the Debtor received none of the consideration for the sale of the property.

32. Advantage Title Agency, Inc. (the "Title Company"), at Nir Meir's direction, served as disbursing agent of the Sale Proceeds. Upon the close of the sale, the Title Company disbursed $6,040,000 of the Sale Proceeds to the escrow account of Rosen Law LLC, for the benefit of Harsh Padia, in satisfaction of the purported Mortgage held by Harsh Padia (the "Closing Transfer"). Upon information and belief, Rosen Law LLC received the Closing Transfer in its capacity as agent and counsel for Harsh Padia.

33. Nir Meir then directed the Title Company to disburse the Sale Proceeds as follows: (i) $500,000.00 to Davidoff Hutcher & Citron LLP ("Davidoff Hutcher"); (ii) $2,000,000 to a JPMorgan Chase Bank, N.A. ("Chase Bank") account ending in -0193 in the name of Ermitage One LLC ("Ermitage"); (iii) $10,587,387.52 to a Chase Bank account ending in -5760 in the name of Nir Meir's wife, Ranee Bartolacci ("Bartolacci"); and (iii) $1,628,158.58 to Nir Meir's Chase Bank account ending in -2895.

34. Upon information and belief, Davidoff Hutcher has served as personal legal counsel to Nir Meir and his family for a number of years.

35. Ermitage had been organized by Davidoff Hutcher as a New York limited liability company on March 26, 2021—just 10 days prior to the sale. Upon information and belief, Ermitage was formed for the purpose of concealing and removing the Debtor's assets from the reach of Nir Meir's creditors. Bartolacci is the sole member of Ermitage.

36. Ermitage was subsequently merged with a limited liability company of the same name organized in the state of Florida, with a principal address at Davidoff Hutcher's offices at 605 Third Avenue, New York, NY 10158.

37.     In sum, the Title Company distributed the proceeds from the sale of 40 Meadow Lane as follows:

**Title Agent Disbursements:**

| | | |
|---|---|---:|
| Advantage Title Agency, Inc. | $ | 1,356,240.62 |
| MCAM 40ML Lender, LLC | $ | 22,796,869.28 |
| Rosen Law LLC for the benefit of Harsh Padia | $ | 6,040,000.00 |
| Davidoff Hutcher & Cirton LLC | $ | 500,000.00 |
| Ermitage One LLC | $ | 2,000,000.00 |
| Ranee E. Bartolacci | $ | 10,587,387.52 |
| Nir Meir | $ | 1,628,158.58 |
| | $ | **44,908,656.00** |

38.     The Title Company also held the sum of $200,000 in escrow (the "<u>Holdover Escrow</u>") to secure the Debtor's post-closing obligation to surrender the property to the third-party purchaser. On June 1, 2021, Nir Meir directed the Title Company to disburse the amount of the Holdover Escrow to Ermitage's Chase Bank account ending in -0193.

39.     The Title Company transferred a total of $14,415,546.10 as outlined above (the "<u>Insider Transfers</u>") from the Sale Proceeds to Nir Meir, Bartolacci and Ermitage (the "<u>Insiders</u>").

40.     Nir Meir authorized and facilitated the aforesaid disbursements in his capacity as the manager of EZL, the managing member of the Debtor, with the actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became indebted on or after the date the disbursements were made.

41.     The Insider Transfers to the Insiders were made in exchange for less than reasonably equivalent value at a time when the Debtor was insolvent or became insolvent as a result of the disbursements.

### F. Financial Condition of the Debtor

42. As a result of the sale of 40 Meadow Lane and the aforesaid disbursements of all the Sale Proceeds, the Debtor was left as an empty shell.

43. Nir Meir knew or should have known that selling 40 Meadow Lane and transferring the Sale Proceeds away from the Debtor, including to the Insiders, would leave the Debtor with unreasonably small capital to pay its debts as they came due.

### G. Subsequent Transfers to Harsh Padia

44. Between April 30, 2021 and September 2, 2021, Nir Meir caused a total of $52,010 in Sale Proceeds to be transferred from Nir Meir's Chase Bank account ending in -2895 to Harsh Padia (the "Subsequent Transfers").

45. A chart of all transfers made to Harsh Padia, including the Closing Transfer and the Subsequent Transfers, is attached hereto as **Exhibit C** and incorporated herein.

46. The Insiders' bank accounts from which the Subsequent Transfers were made, including Nir Meir's Chase Bank account, had small balances prior to receiving the Initial Transfers.

## COUNT I
### Avoidance of the Mortgage Note – Actual Fraud
### (11 U.S.C. § 548(a)(1)(A))

47. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 46 above as if fully set forth herein.

48. The Debtor executed the Mortgage Note on January 19, 2021.

49. As set forth in the Mortgage Note, the Debtor purportedly incurred obligations to and for the benefit of Harsh Padia for $8 million in consideration for the conditional satisfaction of the Meir Guaranties of certain loans described in the Mortgage Note owed by HFZ Capital (not the Debtor) to Harsh Padia and purportedly granted the Liens to Harsh Padia.

50. Nir Meir caused the Debtor to incur obligations under the Mortgage Note with the actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became indebted on or after the date the Mortgage Note obligations were incurred because, among other things:

    (a) The Mortgage Note was for the benefit of Nir Meir, who was an insider of the Debtor at the time of the Mortgage Note;

    (b) Before the obligations under the Mortgage Note were incurred, both Nir Meir and the Debtor had been sued, and threatened with suit;

    (c) The Debtor received less than reasonably equivalent value in exchange for the Mortgage Note; and

    (d) The Debtor was insolvent or became insolvent shortly after incurring the obligations under the Mortgage Note.

51. By reason of the foregoing, the Mortgage Note is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

## COUNT II
### Avoidance of the Mortgage Note – Constructive Fraud
### (11 U.S.C. § 548(a)(1)(B))

52. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 51 above as if fully set forth herein.

53. The Debtor did not receive reasonably equivalent value in exchange for the obligations it incurred under the Mortgage Note.

54. The Debtor's obligations under the Mortgage Note were incurred at a time when: (i) the Debtor was insolvent or rendered insolvent as a result of such obligations, (ii) the Debtor had unreasonably small capital, and/or (iii) the Debtor had incurred or intended to incur debts that it would not be able to pay as they became due.

55. By reason of the foregoing, the Mortgage Note is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### Avoidance of the Liens – Actual Fraud
### (11 U.S.C. § 548(a)(1)(A))

56. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

57. At all relevant times, the Debtor held title to 40 Meadow Lane.

58. On December 15 and 16, 2020, Harsh Padia recorded the UCC Liens against 40 Meadow Lane with the Suffolk County Clerk Records Office.

59. On or around February 5, 2021, Harsh Padia recorded the Mortgage against 40 Meadow Lane.

60. The Liens constitute a transfer of interests in the Debtor's property.

61. Nir Meir caused the Debtor to grant the Liens to Harsh Padia with the actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became indebted on or after the date the Liens were made because, among other things:

    (a) The Liens were granted for the benefit of Nir Meir, who was an insider of the Debtor at the time of the Liens;

    (b) Before the Liens were granted, both Nir Meir and the Debtor had been sued, and threatened with suit;

    (c) The Debtor received less than reasonably equivalent value in exchange for the Liens; and

    (d) The Debtor was insolvent or became insolvent shortly after the Liens were granted to Harsh Padia.

62. By reason of the foregoing, the Liens are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

## COUNT IV
### Avoidance of the Liens – Constructive Fraud
### (11 U.S.C. § 548(a)(1)(B))

63. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 62 above as if fully set forth herein.

64. At all relevant times, the Debtor held title to 40 Meadow Lane.

65. On December 15 and 16, 2020, Harsh Padia recorded the UCC Liens against 40 Meadow Lane with the Suffolk County Clerk Records Office.

66. On or around February 5, 2021, Harsh Padia recorded the Mortgage against 40 Meadow Lane.

67. The Liens constitute a transfer of interests in the Debtor's property.

68. The Debtor received less than reasonably equivalent value in exchange for the Liens.

69. As more particularly set forth above, the Liens were granted at a time when: (i) the Debtor was insolvent or rendered insolvent as a result of such Liens, (ii) the Debtor had unreasonably small capital, and/or (iii) the Debtor had incurred or intended to incur debts that it would not be able to pay as they became due.

70. By reason of the foregoing, the Liens are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT V
### Avoidance of the Closing Transfer – Actual Fraud
### (11 U.S.C. § 548(a)(1)(A))

71. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 70 above as if fully set forth herein.

72. The Sale Proceeds were property of the Debtor.

73. The Closing Transfer occurred within two (2) years of the Petition Date.

74. Nir Meir caused the Debtor to make the Closing Transfer with the actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became indebted on or after the date the Closing Transfer was made because, among other things:

    (e) The Closing Transfer was for the benefit of Nir Meir, who was an insider of the Debtor at the time of the Closing Transfer;

    (f) Before the Closing Transfer was made, both Nir Meir and the Debtor had been sued, and threatened with suit;

    (g) Nir Meir caused the Closing Transfer and the Insider Transfers to occur at the same time and those transfers collectively constituted a transfer of substantially all the Debtor's assets;

    (h) The Debtor received less than reasonably equivalent value in exchange for the Closing Transfer; and

    (i) The Debtor was insolvent or became insolvent shortly after the Closing Transfer was made.

75. By reason of the foregoing, the Closing Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

### COUNT VI
### Avoidance of the Closing Transfer – Constructive Fraud
### (11 U.S.C. § 548(a)(1)(B))

76. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77. The Sale Proceeds were property of the Debtor.

78. The Closing Transfer occurred within two (2) years of the Petition Date.

79. The Debtor received less than reasonably equivalent value in exchange for the Closing Transfer.

80. As more particularly set forth above, the Closing Transfer was made at a time when: (i) the Debtor was insolvent or rendered insolvent as a result of such transfer, (ii) the Debtor had

13

unreasonably small capital, and/or (iii) the Debtor had incurred or intended to incur debts that it would not be able to pay as they became due.

81. By reason of the foregoing, the Closing Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT VII
### Recovery of the Closing Transfer
### (11 U.S.C. § 550(a)(1))

82. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 81 above as if fully set forth herein.

83. The Defendant is either (a) the initial transferee of the Closing Transfer, or (b) the entity for whose benefit the Closing Transfer was made.

84. As more particularly set forth above, the Closing Transfer is avoidable pursuant to 11 U.S.C. §§ 548(a)(1)(A) and/or 548(a)(1)(B).

85. Accordingly, pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to recover from the Defendant the avoided Closing Transfer or the value thereof, for the benefit of the Debtor's Estate.

## COUNT VIII
### Recovery of Subsequent Transfers
### (11 U.S.C. § 550(a)(2))

86. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 85 above as if fully set forth herein.

87. The Insider Transfers are avoidable as to the Insiders, as initial transferees, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and/or 548(a)(1)(B).

88. The Defendant is an immediate or mediate transferee of the Subsequent Transfers.

89. Pursuant to 11 U.S.C. § 550(a)(2), the Trustee is entitled to recover from the Defendant the avoided Subsequent Transfers or the value thereof, for the benefit of the Debtor's Estate.

### COUNT IX
### Disallowance of Claim
### (11 U.S.C. § 502)

90. The Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 89 above as if fully set forth herein.

91. The Defendant is a transferee of transfers that are avoidable pursuant to 11 U.S.C. § 548, which property is recoverable pursuant to 11 U.S.C. § 550.

92. The Defendant has not paid the amount of the avoidable transfers to the Estate, or turned over such property to the Estate, for which the Defendant is liable under 11 U.S.C. § 550.

93. Pursuant to 11 U.S.C. § 502(d), any and all claims of the Defendant and/or its assignees against the Debtor's Estate must be disallowed until such time as the Defendant pays to the Trustee an amount equal to the aggregate amount of the transfers, plus interest thereon and costs.

94. Pursuant to 11 U.S.C. § 502(j), any and all claims of the Defendant, and/or its assignees, against the Debtor's Estate that the Trustee previously allowed must be reconsidered and disallowed until such time as the Defendant pays to the Trustee an amount equal to the aggregate amount of the transfers, plus interest thereon and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant granting the following relief:

A. On Count I of the Complaint, judgment in favor of the Trustee and against the Defendant, avoiding the Mortgage Note pursuant to 11 U.S.C. § 548(a)(1)(A);

B.      On Count II of the Complaint, judgment in favor of the Trustee and against the Defendant, avoiding the Mortgage Note pursuant to 11 U.S.C. § 548(a)(1)(B);

C.      On Count III of the Complaint, judgment in favor of the Trustee and against the Defendant, avoiding the Liens pursuant to 11 U.S.C. § 548(a)(1)(A);

D.      On Count IV of the Complaint, judgment in favor of the Trustee and against the Defendant, avoiding the Liens pursuant to 11 U.S.C. § 548(a)(1)(B);

E.      On Count V of the Complaint, judgment in favor of the Trustee and against the Defendant, avoiding the Closing Transfer pursuant to 11 U.S.C. § 548(a)(1)(A);

F.      On Count VI of the Complaint, judgment in favor of the Trustee and against the Defendant, avoiding the Closing Transfer pursuant to 11 U.S.C. § 548(a)(1)(B);

G.      On Count VII of the Complaint, judgment in favor of the Trustee and against the Defendant, (i) finding that the Trustee may recover the amount of the Closing Transfer from the Defendant pursuant to 11 U.S.C. § 550(a)(1) and (ii) ordering the Defendant to pay to the bankruptcy Estate the aggregate value of the Closing Transfer in an amount not less than the amount of the Closing Transfer, plus interest from the date of the Closing Transfer.

H.      On Count VIII of the Complaint, judgment in favor of the Trustee and against the Defendant, (i) finding that the Trustee may recover the amount of the Subsequent Transfers from the Defendant pursuant to 11 U.S.C. § 550(a)(2); and (ii) ordering the Defendant to pay to the bankruptcy Estate the aggregate value of the Subsequent Transfers, plus interest from the dates of the Subsequent Transfers.

I.      On Count IX of the Complaint, judgment pursuant to 11 U.S.C. §§ 502(d) and (j) disallowing any and all claims held or filed by the Defendant against the Debtor's Estate until the Defendant has returned the amount of the transfers to the Trustee;

J.      On all Counts of the Complaint, ordering the Defendant to pay to the Estate the costs and expenses of this suit to the extent permitted by applicable law; and

K.      Granting the Trustee such other and further relief as this Court may deem just and proper.

Date: April 5, 2024
Wilmington, DE

COZEN O'CONNOR

By:   /s/ *John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 North Market Street
Suite 1001
Wilmington, DE 19801
(302) 295-2000 Telephone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

and

Christina M. Sanfelippo
(*Pro Hac Vice forthcoming*)
123 North Wacker Drive
Suite 1800
Chicago, IL 60606
(312) 382-3100 Telephone
csanfelippo@cozen.com

*Counsel for George L. Miller, Chapter 7 Trustee*