# EXHIBIT "A"

# SETTLEMENT AGREEMENT

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EAM 40 MEADOW LANE LLC,<br><br>                        Debtor. | Case No. 22-10293 (BLS)<br><br>Chapter 7 |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the bankruptcy estate of EAM 40 Meadow Lane LLC,<br><br>                        Plaintiff,<br>v.<br><br>MCAM 40ML LENDER LLC, MONROE CAPITAL MANAGEMENT ADVISORS LLC, and MC ASSET MANAGEMENT (CORPORATE), LLC,<br><br>                        Defendants. | Adv. Pro. No. 24-50036 (BLS) |

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into as of February 11, 2025 by and between George L. Miller, in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of the above-captioned debtor (the "Debtor"), and MCAM 40ML Lender LLC, Monroe Capital Management Advisors LLC, and MC Asset Management (Corporate), LLC, the defendants in the above-captioned adversary proceeding (collectively, the "Defendants" and, together with the Trustee, the "Parties"), individually and/or through their duly authorized undersigned counsel with reference to the following facts and recitals:

      **WHEREAS**, on April 6, 2022 (the "Petition Date"), the Debtor commenced the above-captioned bankruptcy case (the "Bankruptcy Case"), by filing a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

      **WHEREAS**, on or about the Petition Date, the Office of the United States Trustee appointed the Trustee to serve as the duly authorized trustee for the Estate of the Debtor; and

      **WHEREAS**, on April 5, 2024, the Trustee initiated the above-captioned adversary proceeding (the "Adversary Proceeding") by filing a Complaint (the "Complaint"), which sought to avoid and recover certain transfers, as identified on Exhibit "A" to the Complaint (the

74818871\3

"Transfers") related to the mortgage held by Defendant MCAM 40ML Lender LLC ("Mortgage"), as avoidable pursuant to section 548 of the Bankruptcy Code and recoverable pursuant to section 550 of the Bankruptcy Code; and

**WHEREAS**, the Defendants dispute the allegations in the Complaint; and

**WHEREAS**, in order to avoid the potential cost, risk, and delay of litigation, the Parties have determined to resolve their disputes relating to the Transfers on the terms and subject to the conditions set forth in this Settlement Agreement;

**NOW, THEREFORE**, the Parties intending to be legally bound, subject to Bankruptcy Court approval, and for good and valuable consideration the receipt of which is hereby acknowledged, agree as follows:

1. The recitals set forth in the "Whereas" clauses above are incorporated herein by reference.

2. The Defendants agree to pay to the Trustee, and the Trustee agrees to accept, the sum of $700,000 (the "Settlement Amount") in full and complete satisfaction of the Trustee's claims to avoid and recover the Transfers. The Defendants shall pay the Settlement Amount to the Trustee within fourteen (14) days after the Trustee's transmission of a fully executed copy of this Agreement to the Defendants (the "Settlement Payment Date"). Until the Bankruptcy Court Approval Order becomes a Final Order, the Trustee shall be deemed to hold the Settlement Amount in escrow.

> On or before the Settlement Payment Date, the Defendants shall pay the Settlement Amount to the Trustee in immediately available funds denominated in U.S. Dollars, and shall make payment by wire based on instructions to be provided by counsel for **George L. Miller, Chapter 7 Trustee for the Estate of EAM 40 Meadow Lane LLC**.

3. Upon full and final payment of the Settlement Amount to the Trustee and entry of the Bankruptcy Court Approval Order (as defined below), the Trustee on the one hand, and the Defendants on the other hand, in respect of the mutual promises and other consideration recited in this Settlement Agreement, hereby release each other and their respective predecessors in interest,

successors, shareholders, members, directors, officers, employees, agents, attorneys and assigns of any and all obligations, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, arising out of, by reason of, or relating to the Transfers, the Mortgage, and/or the Adversary Proceeding, except that the obligations arising out of this Settlement Agreement are not released. For the avoidance of doubt, this release shall not extend to any proofs of claim filed by the Defendants prior to the date of this Settlement Agreement against the Debtors' Estates.

4. Each Party represents and warrants that it owns, and has not assigned or otherwise transferred to any other person or entity, all such Party's rights and claims as are being altered or otherwise affected by this Settlement Agreement. In the event that a Party breaches the warranty of this paragraph, the release that it received in paragraph 4 shall be null and void.

5. The Parties acknowledge that this Settlement Agreement is a compromise of disputed claims and that neither admits, and each expressly denies, any liability on its part.

6. The Parties represent and acknowledge that, in executing this Settlement Agreement, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, shareholders, representatives, or attorneys, with regard to the subject matter, basis, or effect of this Settlement Agreement or otherwise, other than as specifically stated in this Settlement Agreement.

7. The Parties further declare that, in making this Settlement Agreement, they have relied entirely upon their own judgment, beliefs, and the advice of their counsel (for whose expense each shall be solely responsible), if any, and that they have had a reasonable period of time to consider this Settlement Agreement and, if so desired, to consult with counsel.

8. The Parties agree that each Party and its counsel (if applicable) have reviewed this Settlement Agreement, and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Parties further agree that this Settlement Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

9. The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the Parties.

10. Should any provision(s) of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid, and/or unenforceable, then the legality, validity, and/or enforceability of the remaining parts, terms, and/or provisions shall not be affected thereby, and said illegal, unenforceable, and/or invalid part, term, and/or provision shall be deemed not to be a part of this Settlement Agreement.

11. This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

12. No modification of this Settlement Agreement shall be binding or enforceable unless in writing and signed by the Parties.

13. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, administrators, and assigns.

14. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of

Delaware, without regard to the conflict of laws principles of the State of Delaware. Each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.

15. This Settlement Agreement may be executed in one or more counterparts, including by email or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16. Each person signing this Settlement Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his/her respective clients to the terms and conditions of this Settlement Agreement.

17. Except as provided in paragraph 19 below, this Settlement Agreement's effectiveness is subject to the Bankruptcy Court entering an order (in form acceptable to the Parties) approving this Settlement Agreement in accordance with Federal Rule of Bankruptcy Procedure 9019 the "(Bankruptcy Court Approval Order") and to such order becoming a Final Order.[1] After the Parties have executed this Settlement Agreement and the Trustee has received payment of the Settlement Amount in good funds, the Trustee will proceed to file papers with the Bankruptcy Court to obtain entry of the Bankruptcy Court Approval Order. Both Parties will use their good faith efforts to obtain such approval.

18. In the event that (i) entry of the Bankruptcy Court Approval Order is denied or (ii) the Bankruptcy Court Approval Order fails to become a Final Order by June 30, 2025, the Trustee

---

[1] The Bankruptcy Court Approval Order shall become a "Final Order" when it has been entered on the docket of the Bankruptcy Court, is not stayed, reversed, vacated, modified, or amended, and as to which the time for taking an appeal (or seek certiorari) has expired or, in the event that an appeal has been taken, on the day when the Bankruptcy Court Approval Order is affirmed with no further right of appeal or ability to seek certiorari.

will promptly thereafter return the Settlement Amount to the Defendants and the Settlement Agreement shall be null and void (with the exception of this paragraph).

IN WITNESS WHEREOF, the Parties, individually and/or through their duly authorized undersigned counsel, have each approved and executed this Settlement Agreement.

MILBANK LLP

By: /s/ Jonathan Lamberti
Jonathan Lamberti, Esq.
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5748
JLamberti@milbank.com

*Attorney for the Defendants*

Dated: February 11, 2025

COZEN O'CONNOR

By: /s/ John T. Carroll, III
John T. Carroll, III, Esq.
1201 N. Market St., Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
jcarroll@cozen.com

*Attorney for George L. Miller, Chapter 7 Trustee*

Dated: February 12, 2025