IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| EAM 40 MEADOW LANE LLC, | ) | Case No. 22-10293 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the bankruptcy estate of EAM 40 Meadow Lane LLC, | ) ) ) | Adv. No. 24-50032 (BLS) |
| | ) | |
| Plaintiff, | ) | Re: Adv. D.I. 18, 22, 26 |
| | ) | |
| v. | ) | |
| | ) | |
| QUINN EMANUEL URQUHART & SULLIVAN LLP, | ) ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM ORDER</u>**

Plaintiff George L. Miller, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of EAM 40 Meadow Lane LLC (the "Debtor"), brought this Adversary Proceeding seeking to avoid and recover fraudulent transfers from Defendant Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel" or "Defendant"). Quinn Emanuel subsequently brought this Rule 12(c) Motion for Judgment on the Pleadings (the "Motion"). Briefing on the matter has been completed. The Complaint alleges the following facts:

1.  In or around December 2013, the Debtor acquired 40 Meadow Lane (the "Property") for a purchase price of $10.5 million at the direction of Nir Meir ("Meir"), the sole

manager of the Debtor's managing member, EZL 40 Meadow Lane LLC ("EZL").[1] The Debtor was organized for the sole purpose of purchasing the Property to tear down the existing structure and build a new luxury home.[2]

2.     In connection with the construction of the new luxury home, Meir is alleged to have caused the Debtor to incur significant debts, including an $18.35 million loan from MCAM 40ML Lender LLC for construction costs.[3]

3.     Upon completion of the construction, Meir and his family moved into the new home on the Property where they resided until approximately April 2021. The Complaint alleges that Meir did not pay the Debtor any consideration for use of the Property.[4]

4.     Beginning in 2020, HFZ Capital defaulted on certain loan obligations in connection with various construction projects.[5] Around the same time, it is alleged that HFZ Capital's founding principal discovered that Meir had been misappropriating the company's funds and fired Meir.[6] After his access to the HFZ Capital funds was cut off, Meir allegedly began to use the Debtor's assets as collateral for personal loans.[7]

5.     On April 5, 2021, Meir caused the Debtor to sell the Property together with certain furnishings to a third party for a total of $44,908,656 (the "Sale Proceeds").[8] The Debtor

---

[1] Adv. D.I. 1 (the "Complaint") at ¶¶ 9-10. Initially, 100% of the ownership interests in the Debtor were held by HFZ Capital Group LLC ("HFZ Capital"), a real estate development firm which employed Meir as its managing director. As of the petition date, however, 95% of the Debtor's ownership interests were held by EZL and the remaining 5% were held by HFZ. *Id.*
[2] *Id.* at ¶¶ 11-13.
[3] *Id.* at ¶ 14.
[4] *Id.* at ¶ 15.
[5] *Id.* at ¶ 17.
[6] *Id.* at ¶ 19.
[7] *Id.* at ¶ 21. For example, Meir is alleged to have caused the Debtor to grant his business associate, Harsh Padia, a mortgage on the Property to secure a debt of approximately $8,000,000 that Meir—not the Debtor—owed to Padia. *Id.*
[8] *Id.* at 23.

allegedly received none of the consideration for the sale of the Property, despite holding title in fee simple to the real property.[9]

6. Advantage Title Company (the "Title Company"), at Meir's direction, served as the disbursing agent of the Sale Proceeds. The Complaint alleges that the Title Company made the following disbursements:

   a. $1,356,240.62 to Advantage Title Agency, Inc;
   b. $22,796,869.28 to MCAM 40ML Lender LLC to satisfy an outstanding mortgage lien;
   c. $6,040,000.00 to Rosen Law LLC for the benefit of Harsh Padia to satisfy a purported mortgage lien;
   d. $500,000.00 to Davidoff Hutcher & Citron LLP ("Davidoff Hutcher"), who served as the Meir family's personal legal counsel;
   e. $2,000,000.00 to a bank account in the name of Ermitage One LLC ("Ermitage"). An additional $200,000 in escrow was transferred to Ermitage on June 1, 2021;
   f. $10,587,387.52 to a bank account in the name of Ranee Bartolacci ("Bartolacci"), who is Meir's wife;
   g. $1,628,158.58 to a bank account in the name of Nir Meir.

7. The Complaint alleges that Meir, Bartolacci, and Ermitage (the "Insiders") subsequently transferred $250,000 of the Sale Proceeds from Ermitage's bank account to the Defendant on April 16, 2021 (the "Subsequent Transfer").[10] The Trustee alleges that the Insiders' bank accounts from which the Subsequent Transfer were made had small balances prior to receiving the initial disbursements.[11]

8. The Trustee alleges that Ermitage was organized by Davidoff Hutcher 10 days prior to the Property sale for the purpose of concealing and removing the Debtor's assets from the reach of Meir's creditors.[12] Bartolacci is the sole member of Ermitage.[13]

---

[9] *Id.* at ¶ 22-23.
[10] Trustee identifies these three transactions by date, method, amount, transferor name, and transferor account at Compl., Ex. A.
[11] *Id.* at ¶ 38.
[12] *Id.* at ¶ 27.
[13] *Id.*

9. The Complaint alleges Meir authorized and facilitated these disbursements in his capacity as manager of EZL, the managing member of the Debtor.[14]

10. The Trustee alleges the transfers to the Insiders were made in exchange for less than reasonably equivalent value at a time when the Debtor was insolvent or became insolvent as a result of the disbursements.[15] The sale of the Property and the disbursement of the Sale Proceeds left the Debtor as an assetless shell.[16]

11. On February 1, 2024—six days before the announcement of the indictment of HFZ Capital and Meir for allegedly stealing more than $86 million through a series of frauds and schemes dating back to 2015[17]— Meir filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of Florida.[18] The Trustee filed a proof of claim in Meir's Florida bankruptcy case on April 5, 2024.[19]

## DISCUSSION

Quinn Emanuel has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion,[20] and judgment is proper when the movant "clearly establishes that no material

---

[14] *Id.* at ¶ 32.
[15] *Id.* at ¶ 33.
[16] *Id.* at ¶ 34.
[17] *Id.* at ¶ 16. *See also* Press Release, District Attorney for New York County, D.A. Bragg: HFZ Capital, Managing Principal, Other Executives Indicted For Frauds Totaling $86 Million (Feb. 7, 2024) https://manhattanda.org/d-a-bragg-hfz-capital-managing-principal-other-executives-indicted-for-frauds-totaling-86-million/.
[18] *In re Nir Meir*, Case No. 24-11047-LMI (Bankr. S.D. Fla. 2024).
[19] *See generally, id.*, Proof of Claim No. 2-1 and addendum to Proof of Claim.
[20] *Off'l Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.)*, 422 B.R. 5, 9 (Bankr. D. Del. 2010). "[T]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).

Quinn Emanuel's Motion makes three primary arguments: (1) that Section 550(a) of the Bankruptcy Code requires the initial transfer to Meir be avoided first before any subsequent transfer to Quinn Emanuel can be avoided; (2) that Section 550(b)(1) of the Bankruptcy Code requires the Trustee to include in the complaint allegations of the Defendant's bad faith or knowledge of the voidability of the Subsequent Transfer; and (3) that Count II should be dismissed because Quinn Emanuel has not filed a proof of claim, nor is it scheduled as holding an unsecured claim.

The Trustee responds that a majority of the caselaw considering the issue of Section 550(a) holds that the Trustee must prove the avoidability of the initial transfer but does not have to avoid the initial transfer prior to collecting from a subsequent transferee. Additionally, the Trustee argues that Section 550(b)(1) is an affirmative defense and, as such, the Trustee is not required to anticipate or plead facts around it. The Trustee also argues that there are additional issues of material fact to be resolved, making this Motion inappropriate for resolution at this stage. Finally, the Trustee asks the court to deny Defendant's request to dismiss Count II of the Complaint because Quinn Emanuel may still assert a proof of claim at a future date.

Bankruptcy Code Section 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 723(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from - -
   (1) The initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) Any immediate or mediate transferee of such initial transferee.

The Court disagrees with Quinn Emanuel's argument that Section 550(a) requires the Trustee to first avoid the Initial Transfers from the Title Company to the Insiders before pursuing avoidance of the subsequent transfers to the Defendant. The view adopted by the majority of jurisdictions—including Delaware—is that "a transfer may be found avoidable and a recovery may be had from a subsequent transferee without suing the initial transferee." 5 Collier on Bankruptcy ¶550.2 (16th ed. 2024). As this Court has held, "[w]hile the Trustee, of course, must still prove that the [t]ransfers can be avoided under Section 547,[21] to the extent he is able to do so they are recoverable from [the defendant, who was not the initial transferee.]" *Miller v. Monarch Apparel Grp., Inc. (In re J&M Sales Inc.)*, 644 B.R. 440, 445 (Bankr. D. Del. 2022). The Court notes that although Section 550 actions are often accompanied by avoidance claims against the initial transferee, the plain language of § 550 itself does not require simultaneous filing or naming the initial transferee in the Complaint against the subsequent transferee. *Id.*

Quinn Emanuel's argument that it acted in good faith raises factual issues unsuitable for resolution at this stage. Such issues of fact preclude a judgment on the pleadings.[22] Affirmative defenses, including good faith under Section 550(b), generally cannot form the basis for dismissal unless the complaint unequivocally demonstrates their applicability, which is not the case here.[23] The Trustee is not required to anticipate and plead around affirmative defenses in his complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2020) ("[A] complaint need not

---

[21] Or, in this case, the Trustee must prove the transfers can be avoided under Section 548.

[22] *Vatidis v. Trimble, Inc.*, No. CV 18-998 (MN), 2019 WL 3205789, at *3 (D. Del. July 16, 2019) ("A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if provided, would defeat recovery.") (citations omitted).

[23] Courts across jurisdictions have widely held that good faith is an affirmative defense. *See, e.g.*, *In re Live Well Fin., Inc.*, 652 B.R. 699, 707 (Bankr. D. Del. 2023) ("A complaint will only be dismissed where the defendant's good faith is apparent on the face of the complaint."); *In re Covenant Partners, L.P.*, 531 B.R. 84, 93 (Bankr. E.D. Pa. 2015) (holding good faith is an affirmative defense not suitable for resolution on a motion to dismiss (citing *In re Bressman*, 327 F.3d 229, 235-36 (3d Cir. 2003)); *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 770 (Bankr. S.D. Fla. 2013) ("[A]n affirmative defense — especially one which turns on a fact-intensive analysis of a party's good faith — is generally not an appropriate basis for dismissal.").

anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat [an affirmative defense.]").

Quinn Emanuel moves to dismiss Count II of the Complaint which seeks to disallow any claims of the Defendant against the Debtor's estate under Bankruptcy Code § 502(d) or § 502(j). Quinn Emanuel has not filed a proof of claim and states that it neither has a contractual relationship with nor any claims against the Debtor. The Trustee contends that Count II should not be dismissed because Quinn Emanuel could still potentially assert a claim under Section 726(a)(1) of the Bankruptcy Code.[24] However, this Court has previously held that a claim under § 502(d) is premature if a trustee does not allege that a defendant has filed any proof of claim and when a trustee does not yet have a judgment against the transferee.[25] Accordingly, Count II is dismissed.

Accordingly, it is hereby **ORDERED** that the Motion is **DENIED IN PART,** with respect to Count I of the Complaint, **and GRANTED IN PART**, with respect to Count II of the Complaint, and it is further,

**ORDERED** that the Court will hold a status hearing to discuss further steps in this adversary proceeding on **October 9, 2025 at 2 p.m. (ET)** in Courtroom No. 1, United States Bankruptcy Court, 824 N. Market Street, 6th Floor, Wilmington, DE 19801.

BY THE COURT:

Dated: September 22, 2025
Wilmington, Delaware

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

---

[24] Under Section 726(a)(1), a creditor may assert a claim until the earlier of "(A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or (B) the date on which the trustee commences final distribution under this section."

[25] *Zazzali v. AFA Fin. Grp., LLC*, No. 10-54524 PJW, 2012 WL 4903593, * (Bankr. D. Del. Aug. 28, 2012) (citing *DHP Holdings II Corp. v. Peter Skop Indus. Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 226 (Bankr. D. Del. 2010).