**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| EAM 40 MEADOW LANE LLC, | Case No. 22-10293 (BLS) |
| Debtor. | |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the bankruptcy estate of EAM 40 Meadow Lane LLC, | Adv. No. 24-50027 (BLS) |
| Plaintiff, | Re: Adv. D.I. 11, 12, 13, 15, 16 |
| v. | |
| ERIC TANJELOFF, | |
| Defendant. | |

## <u>MEMORANDUM ORDER</u>

Plaintiff George L. Miller, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of EAM 40 Meadow Lane LLC (the "Debtor"), brought this Adversary Proceeding seeking to avoid and recover fraudulent transfers from Defendant Eric Tanjeloff ("Tanjeloff" or "Defendant"). Tanjeloff subsequently brought this Motion to Dismiss the Complaint (the "Motion"). Briefing on the matter has been completed. The Complaint alleges the following facts:

1.      In or around December 2013, the Debtor acquired 40 Meadow Lane (the "Property") for a purchase price of $10.5 million at the direction of Nir Meir ("Meir"), the sole

manager of the Debtor's managing member, EZL 40 Meadow Lane LLC ("EZL").[1]  The Debtor

was organized for the sole purpose of purchasing the Property to tear down the existing structure

and build a new luxury home.[2]

2.    In connection with the construction of the new luxury home, Meir is alleged to

have caused the Debtor to incur significant debts, including an $18.35 million loan from MCAM

40ML Lender LLC for construction costs.[3]

3.    Upon completion of the construction, Meir and his family moved into the new

home on the Property where they resided until approximately April 2021.  The Complaint alleges

that Meir did not pay the Debtor any consideration for use of the Property.[4]

4.    Beginning in 2020, HFZ Capital defaulted on certain loan obligations in

connection with various construction projects.[5] Around the same time, it is alleged that HFZ

Capital's founding principal discovered that Meir had been misappropriating the company's

funds and fired Meir.[6] After his access to the HFZ Capital funds was cut off, Meir allegedly

began to use the Debtor's assets as collateral for personal loans.[7]

5.    On April 5, 2021, Meir caused the Debtor to sell the Property together with

certain furnishings to a third party for a total of $44,908,656 (the "Sale Proceeds").[8] The Debtor

---

[1] Adv. D.I. 1 (the "Complaint") at ¶¶ 9-10.  Initially, 100% of the ownership interests in the Debtor were held by HFZ Capital Group LLC ("HFZ Capital"), a real estate development firm which employed Meir as its managing director. As of the petition date, however, 95% of the Debtor's ownership interests were held by EZL and the remaining 5% were held by HFZ.  *Id.*
[2] *Id.* at ¶¶ 11-13.
[3] *Id.* at ¶ 14.
[4] *Id.* at ¶ 15.
[5] *Id.* at ¶ 17.
[6] *Id.* at ¶ 19.
[7] *Id.* at ¶ 21. For example, Meir is alleged to have caused the Debtor to grant his business associate, Harsh Padia, a mortgage on the Property to secure a debt of approximately $8,000,000 that Meir—not the Debtor—owed to Padia. *Id.*
[8] *Id.* at 23.

allegedly received none of the consideration for the sale of the Property, despite holding title in fee simple to the real property.[9]

6.      Advantage Title Company (the "Title Company"), at Meir's direction, served as the disbursing agent of the Sale Proceeds. The Complaint alleges that the Title Company made the following disbursements:

    a.  $1,356,240.62 to Advantage Title Agency, Inc;
    b.  $22,796,869.28 to MCAM 40ML Lender LLC to satisfy an outstanding mortgage lien;
    c.  $6,040,000.00 to Rosen Law LLC for the benefit of Harsh Padia to satisfy a purported mortgage lien;
    d.  $500,000.00 to Davidoff Hutcher & Citron LLP, who served as the Meir family's personal legal counsel;
    e.  $2,000,000.00 to a bank account in the name of Ermitage One LLC ("Ermitage"). An additional $200,000 in escrow was transferred to Ermitage on June 1, 2021;
    f.  $10,587,387.52 to a bank account in the name of Ranee Bartolacci ("Bartolacci"), who is Meir's wife;
    g.  $1,628,158.58 to a bank account in the name of Nir Meir.

7.      The Complaint alleges that Meir, Bartolacci, and Ermitage (the "Insiders") subsequently transferred $175,000 of the Sale Proceeds from Meir's account to the Defendant over a series of four transactions from April 15, 2021 to June 18, 2021 (the "Subsequent Transfers")[10] to partially satisfy obligations under an apparently unrelated promissory note owed by Meir to Tanjeloff.[11] The Trustee alleges that the Insiders' bank accounts from which the Subsequent Transfers were made had small balances prior to receiving the initial disbursements.[12]

---

[9] *Id.* at ¶ 22-23.
[10] *Id.* at ¶¶ 31, 36-37.  The Trustee identifies these four transactions by date, method, amount, transferor name, and transferor account at Compl., Ex. A.
[11] Defendant produced this promissory note. *See* Adv. D.I. 13, ex. A.
[12] Compl. at ¶ 38.

8.      The Complaint alleges Meir authorized and facilitated the Initial Transfers in his capacity as manager of EZL, the managing member of the Debtor.[13] The Trustee also alleges the sale was part of a scheme to evade creditors for his personal loans.[14]

9.      The Trustee alleges the transfers to the Insiders were made in exchange for less than reasonably equivalent value at a time when the Debtor was insolvent or became insolvent as a result of the disbursements.[15]  The sale of the Property and the disbursement of the Sale Proceeds left the Debtor as an assetless shell.[16]

10.     On February 1, 2024—six days before the announcement of the indictment of HFZ Capital and Meir for allegedly stealing more than $86 million through a series of frauds and schemes dating back to 2015[17]— Meir filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of Florida.[18] The Trustee filed a proof of claim in Meir's Florida bankruptcy case on April 5, 2024.[19]

## DISCUSSION

Tanjeloff has moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) based on two primary arguments:: (1) that Section 550(b)(1) of the Bankruptcy Code requires the Trustee's Complaint to allege the Defendant's bad faith or knowledge of the voidability of the Subsequent Transfers; and (2) that the Complaint lacks sufficient facts to trace payment back to the Initial Transfers. Tanjeloff also argues for dismissal under Section 105(a) because it would

---

[13] *Id.* at ¶ 32.
[14] *Id.*, at ¶¶ 22-23.
[15] *Id.* at ¶ 33.
[16] *Id.* at ¶ 34.
[17] *Id.* at ¶ 16.  *See also* Press Release, District Attorney for New York County, D.A. Bragg: HFZ Capital, Managing Principal, Other Executives Indicted For Frauds Totaling $86 Million (Feb. 7, 2024) https://manhattanda.org/d-a-bragg-hfz-capital-managing-principal-other-executives-indicted-for-frauds-totaling-86-million/.
[18] *In re Nir Meir*, Case No. 24-11047-LMI (Bankr. S.D. Fla. 2024).
[19] *See generally, id.*, Proof of Claim No. 2-1 and addendum to Proof of Claim.

be "inequitable" to require the Defendant to bear the expense of discovery when no wrongdoing or bad faith has been alleged.

The Trustee responds that Section 550(b)(1) is an affirmative defense and, as such, the Trustee is not required to anticipate or plead facts around it. Further, the Trustee argues that the Motion is premised entirely on this affirmative defense which cannot form the basis of a motion to dismiss. The Trustee also responds that, for the purposes of a Rule 12(b)(6) motion, the Complaint adequately alleges facts describing the wrongful transfer of the Debtor's property to an initial transferee and identifying the details of the subsequent transfer of that property to the Defendant. Finally, the Trustee argues that Section 105(a) cannot be used to dismiss a complaint.

As a threshold matter, Tanjeloff's argument that he acted in good faith raises factual issues unsuitable for resolution at this stage. Affirmative defenses, including good faith under Section 550(b), generally cannot form the basis for dismissal unless the complaint unequivocally demonstrates their applicability which is not the case here.[20] The Trustee is not required to anticipate and plead around affirmative defenses in his complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2020) ("[A] complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat [an affirmative defense.]").

With respect to Tanjeloff's second argument, the Court also finds that the Trustee's Complaint alleges sufficient facts to support a plausible claim that transfers of the Debtor's

---

[20] Courts across jurisdictions have widely held that good faith is an affirmative defense. *See, e.g., In re Live Well Fin., Inc.*, 652 B.R. 699, 707 (Bankr. D. Del. 2023) ("A complaint will only be dismissed where the defendant's good faith is apparent on the face of the complaint."); *In re Covenant Partners, L.P.*, 531 B.R. 84, 93 (Bankr. E.D. Pa. 2015) (holding good faith is an affirmative defense not suitable for resolution on a motion to dismiss (citing *In re Bressman*, 327 F.3d 229, 235-36 (3d Cir. 2003)); *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 770 (Bankr. S.D. Fla. 2013) ("[A]n affirmative defense — especially one which turns on a fact-intensive analysis of a party's good faith — is generally not an appropriate basis for dismissal.").

property are avoidable under Bankruptcy Code Section 548 and sufficient details identifying the

subsequent transfers of that property to Tanjeloff.

"To plead a subsequent transfer claim, the trustee must plead that the initial transfer is

avoidable, and that the defendant is a subsequent transferee of that initial transfer." *Picard v.*

*Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014).

Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer, but

Rule 8(a) governs the portion of a claim to recover the subsequent transfer. *Id.* (citations

omitted).[21]  Under Fed.R.Civ.P. 8(a), a complaint must include a "short and plain statement"

showing that the plaintiffs are entitled to the relief sought. While claims must allege sufficient

facts to establish that the plaintiff is entitled to the relief sought, it is not required to include all

the information that the parties will eventually learn through the discovery process.

Here, the Complaint adequately alleges details of an overarching scheme to defraud

creditors.  The Complaint alleges particular facts regarding the sale of the Debtor's Property and

the transfer of the sale proceeds through the identified Initial Transfers. This satisfies the

pleading requirements for the avoidability of the initial fraudulent transfers.

To meet his burden at the pleading stage on a claim to recover a subsequent transfer, a

plaintiff only must allege facts that "support the inference that the funds at issue originated with

the debtor and contain the necessary vital statistics - - the who, when and how much of the

purported transfers - - to establish an entity as a subsequent transferee of the funds." *Madoff Inv.*

*Sec.*, 515 B.R. at 149.  Here, the Complaint contains specific allegations that the Initial Transfers

moved the Debtor's funds into various bank accounts, including an account of Meir.  Further, the

---

[21] In this Complaint, the Trustee asserts that the transfers are avoidable as both intentional and constructive fraudulent transfers.  The constructive fraudulent transfer claim is not subject to the heightened pleading standard that applies in cases of actual fraud.  *Off'l Comm. of Unsecured Creditors v. Nimble Gravity, LLC (In re Pack Liquidating, LLC)*, 2024 WL 4633499, *4 (Bankr. D. Del. Oct. 30, 2024).

Complaint alleges "vital statistics" about the four subsequent transfers to the Defendant: the Trustee identifies the specific transactions by date amount, transferor, and the specific bank account the transfers came from. This is sufficient to satisfy the purpose of Rule 8(a), which is to put the Defendant on notice as to precisely which transfers the Trustee seeks to recover.

Finally, the Court finds that Section 105(a) does not support dismissal of this case. Section 105(a) of the Bankruptcy Code states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). While section 105(a) gives courts the authority to issue orders necessary to carry out the provisions of the Bankruptcy Code, including addressing complaints that are frivolous, brought in bad faith, or intended to hinder the bankruptcy process, no such abuse of process has occurred here. It is not "inequitable," as the Defendant argues, to allow the Trustee to pursue a claim under the Bankruptcy Code that otherwise satisfies the Federal Rules of Civil Procedure. The Defendant's arguments concerning good faith are defenses to such claims, not a basis for dismissal.

Accordingly, it is hereby:

**ORDERED** that the Motion is **DENIED**, and it is further,

**ORDERED** that the Court will hold a status hearing to discuss further steps in this adversary proceeding on **October 9, 2025 at 2 p.m. (ET)** in Courtroom No. 1, United States Bankruptcy Court, 824 N. Market Street, 6th Floor, Wilmington, DE 19801.

BY THE COURT:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

Dated:  September 22, 2025
        Wilmington, Delaware